IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **STATE FARM FIRE & CASUALTY COMPANY,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**NATHANIEL W. LEE, et al.,** )<br>)<br>Defendants. ) | Case No.: 4:09-CV-0015-VEH |

## MEMORANDUM OPINION

### I.      INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff State Farm Fire & Casualty Company ("State Farm") initiated this insurance coverage case arising under the Federal Declaratory Judgment Act and Alabama law against Defendant Nathaniel W. Lee ("Mr. Lee"), its insured under a policy of homeowner's insurance, on January 6, 2009. (Doc. 1). On February 15, 2011, State Farm filed its most recent amended complaint for declaratory relief. (Doc. 31). This pleading named as party defendants Jeffery Stone ("Mr. Stone"), individually and as the personal representative of the estate of his son, Jeffery Blake Stone, and Lynn Stone ("Mrs. Stone"), individually, in addition to Mr. Lee. (Doc. 31).

The court dismissed this lawsuit with prejudice on April 8, 2011, due to the parties' reported settlement. (Doc. 39). However, on May 16, 2011, State Farm filed a Motion to Reinstate Action (Doc. 40), which documented how the resolution reached by the litigants had subsequently fallen apart. After no party filed a response to the related show cause order (Doc. 41) entered on May 16, 2011, the court granted the relief sought by State Farm and reinstated this declaratory judgment action on June 3, 2011. (Doc. 43).

Pending before the court is State Farm's Motion for Summary Judgment (*see* Doc. 42; Doc. 43; *see also* Doc. 38) (the "Motion"), that was filed originally on March 10, 2011 (Doc. 38), and reinstated effective June 1, 2011. (Doc. 43 at 2). State Farm's supporting brief and evidence were filed collectively with its Motion (*see generally* Doc. 38; Doc. 38-1), and State Farm did not seek to supplement any of those materials when it requested that the court reinstate the Motion. (*See generally* Doc. 42).

Mr. Lee filed his opposition brief (Doc. 44) to the Motion on June 22, 2011. No other party has opposed the Motion, and State Farm chose not to file a reply. Accordingly, the Motion is now under submission, and, for the reasons explained below, is due to be granted.

## II. BACKGROUND

### A. Underlying Facts and Allegations[1]

On July 2, 2008, nineteen year old Mr. Lee and twenty-two year old Troy Andrew Smiley ("Mr. Smiley"), both of Attalla, Alabama, were charged with first degree murder and corpse abuse of Jeffery Blake Stone. The body of Jeffery Blake Stone was found July 1, 2008, in a freezer at Mr. Lee's residence. Both Mr. Lee and Mr. Smiley were indicted for the death of Jeffery Blake Stone by a grand jury on September 5, 2008.

On November 5, 2010, Mr. Lee pled guilty in the Etowah County Circuit Court to Class A felony charges for murder and corpse abuse of Jeffery Blake Stone. On November 10, 2010, Mr. Lee was adjudicated guilty of those same charges.

---

[1] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following underlying facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy. Finally, these facts are taken from State Farm's Motion (*see* Doc. 38 at 4-6), the substance of which Mr. Lee has indicated he does not dispute, as well as Mr. Lee's statement of additional facts. (*See* Doc. 44 at 1 ¶ A ¶ 1 (indicating no dispute over State Farm's version of underlying facts); *id.* at 1-2 ¶ B ¶¶ 1-3 (listing additional facts)).

A complaint seeking damages for the wrongful death of Jeffery Blake Stone was filed by Mr. Stone individually, and as the father of Jeffery Blake Stone, against Mr. Lee and Mr. Smiley on or about July 3, 2008, in the Circuit Court of Etowah County (the "Wrongful Death Suit"). This initial pleading specifically alleged that Defendants "wrongfully, intentionally and/or negligently shot decedent, Jeffery Blake Stone, numerous times." Additionally, the first complaint alleged that the "the wrongful actions of the Defendants were willful and/or grossly negligent and were so wanton as to show a disregard for the safety of others, thus giving rise to an award of punitive damages against Defendants."

An amended complaint seeking damages for the abuse of a corpse and outrage was filed by Mr. Stone against Mr. Lee and Mr. Smiley in the Wrongful Death Suit on or about October 8, 2009. A second amended complaint, filed on or about December 29, 2008, added the claim of outrage to the underlying litigation as it pertains to Mrs. Stone, Jeffery Blake Stone's step-mother.

    **B.**    **Pertinent Policy Language**[2]

        **1.**    **Occurrence**

An "**occurrence**" under the policy is defined to mean:

[A]n accident, including exposure to conditions, which results in:

    a.    **bodily injury**; or

    b.    **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

(Doc. 38-1 at 17 ¶ 7).

        **2.**    **Exclusions**

    1.    Coverage L and Coverage M do not apply to:

        a.    **bodily injury** or **property damage**:

            (1)    which is either expected or intended by the **insured** [*i.e.*, the intentional acts exclusion]; or

            (2)    which is the result of willful and malicious acts of the **insured** [*i.e.*, the malicious acts exclusion.]

(Doc. 38-1 at 31 § II ¶ 1 ¶ a).

---

[2] While State Farm actually issued the subject homeowner's policy to a person other than Mr. Lee (*i.e.*, Donald Lee), there is no dispute that Mr. Lee is still defined as an insured under the contract of insurance. (*See* Doc. 38 at 2 § II ¶ A ¶ 1; *see also* Doc. 38-1 at 16 ¶ 4).

### III.  STANDARD

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  Finally, "[i]f the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d at 1275 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

## IV.   ANALYSIS

### A.   General Principles

A federal court sitting in diversity, as in this lawsuit, must apply the choice of law principles of the state in which it sits. In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus*, applying the law of the state where the contract was formed. *St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1 (11th Cir. 2009) (citing *Cherokee Ins. Co., Inc. v. Sanches*, 975 So.2d 287, 292 (Ala. 2007)). This court is being asked to interpret an Alabama insurance policy; therefore, Alabama substantive law applies.[3]

> Alabama law generally imposes the burden of proof on policy coverage issues on the insured, while the burden of proving applicability of a policy exclusion rests with the insurer. Compare *Jordan v. National Acc. Ins. Underwriters Inc.*, 922 F.2d 732, 735 (11th Cir. 1991) ("Under Alabama law the general rule is that the insured bears the burden of proving coverage.") with *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 12 (Ala. 2001) ("In general, the insurer bears the burden of proving the applicability of any policy exclusion."). Exceptions to coverage are interpreted as narrowly as possible to maximize coverage, and are construed strongly against the insurance company that issued the policy. *See Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 806 (Ala. 2002).

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. Roberts Bros., Inc.*, 550 F. Supp. 2d 1295,

---

[3] Further, the parties are in agreement that Alabama law governs this court's interpretation of the insurance contract.

1303 (S.D. Ala. 2008).  Also,

> Under Alabama law, it is well established "that when doubt exists as to whether coverage is provided under an insurance policy, the language used by the insurer must be construed for the benefit of the insured." [*St. Paul Mercury Ins. Co. v.*] *Chilton-Shelby* [*Mental Health Center*], 595 So. 2d [1375,] at 1377 [(Ala. 1992)]; *see Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005) ("To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company."). It is equally well settled, however, that insurers have the right to limit their liability by writing policies with narrow coverage. *Johnson v. Allstate Ins. Co.*, 505 So. 2d 362, 365 (Ala. 1987). If there is no ambiguity, courts must enforce insurance contracts as written and cannot defeat express provisions in a policy by making a new contract for the parties. *Id.*

*St. Paul Fire and Marine Ins. Co.*, 572 F.3d at 898.

In this coverage dispute, State Farm contends that it does not owe a duty to defend Mr. Lee in the underlying lawsuit for three reasons: (1) the shooting death of Jeffery Blake Stone was not an "occurrence" as that term is defined under the relevant policy; (2) the intentional acts exclusion precludes coverage; and (3) the malicious acts exclusion precludes coverage. Because, for the reasons discussed *infra*, the malicious acts exclusion precludes coverage under the terms of the policy, this court need not and has not considered State Farm's alternative arguments presented in its Motion.

### B.     Duty to Defend

"The law is clear that an 'insurer's duty to defend is more extensive than its duty to indemnify.'" *Pennsylvania Nat. Mut. Cas. Ins. Co.*, 550 F. Supp. 2d at 1304 (internal marks omitted) (quoting *Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003)). "The insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the suit against the insured." *Alfa Mut. Ins. Co., Inc. v. Morrison*, 613 So.2d 381, 382 (Ala. 1993). "If the allegations in the underlying complaint show an occurrence within the coverage of the policy, then the insured is obligated to defend, regardless of the ultimate liability of the insured." *St. Paul Fire and Marine Ins. Co.*, 572 F.3d at 895 (citing *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1168 (Ala. 1985)); *see also ERA Oxford*, 572 F.3d at 895 ("If the allegations in the underlying complaint show an occurrence within the coverage of the policy, then the insured is obligated to defend, regardless of the ultimate liability of the insured.") (citation omitted).

That said, "[w]hen any 'uncertainty' exists about whether the occurrence is covered under the policy, 'the court is not limited to the bare allegations of the complaint in the action against the insured but may look to facts which may be proved by admissible evidence.'" *Great American Ins. Co. v. Baddley and Mauro, LLC*, 330

Fed. Appx. 174, 177 (11th Cir. 2009) (quoting *Hartford Cas. Ins. Co.*, 928 So. 2d at 1009 (quoting, in turn, *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001)) (bracketed text omitted).

Here, the court assumes without deciding that the underlying allegations of the Wrongful Death Suit over the shooting death of Jeffery Blake Stone are sufficient to trigger an "occurrence" under the policy and concomitantly a duty on the part of State Farm to defend Mr. Lee. However, State Farm nevertheless is not obligated to defend Mr. Lee in the Wrongful Death Suit because the malicious acts exclusion precludes coverage for the reasons explained below.

In *State Farm Fire and Cas. Co. v. Davis*, 612 So.2d 458 (Ala. 1993), the Supreme Court of Alabama answered certain certified questions relating to insurance coverage for cases involving the sexual abuse and molestation of minors. *Id.* at 459 ("C) Would any of the stated policy exclusions apply and as a matter of law relieve a defendant of the duty to indemnify or defend either or both Jerry Davis and Delores Davis?"); *id.* at 460 ("Because our answer to question C disposes of the issues presented in the declaratory judgment action, we need not address the remaining questions.").

One of the exclusions at issue in *Davis* mirrors the malicious acts exclusion here. In addressing this particular provision, the Supreme Court of Alabama made

10

it clear that an objective standard applied to such an exclusion:

> There is another reason why the judgment of the trial court is due to be affirmed. The discussion above is based on the policy exclusion precluding coverage for bodily injury "which is either expected or intended by an insured," but <u>we also hold, based on the facts and circumstances presented here, that coverage would likewise be precluded under the objective standard of the second policy exclusion, which denies coverage for bodily injury or property damage "to any person or property which is the result of willful and malicious acts of an insured</u>."

*Davis*, 612 So. 2d 465 (emphasis added). This objective standard was in contrast to the intentional acts exclusion which normally employs a subjective standard under Alabama law, but as to which the *Davis* court created a limited exception by "adopt[ing] the inferred-intent rule in child sex abuse cases." *Id.* at 464; *see also id.* ("Our holding today does not alter the holding of *Dyer* and its progeny, but only creates one narrow exception in cases of sexual abuse of children.").

Building upon the *Davis* decision, the Alabama Court of Civil Appeals upheld a trial court's ruling that a malicious acts exclusion precluded coverage in a lawsuit involving "allegations of invasion of privacy, intentional infliction of emotional distress, negligence, wantonness, and recklessness" stemming from an unauthorized videotaping of the plaintiff "in various stages of undress[.]" *McCauley v. Estes*, 726 So. 2d 719, 720, 721 (Ala. Civ. App. 1998). As the Alabama Court of Civil Appeals reasoned:

11

However, in reaching its judgment in the present action, the trial court did not rely on a contract provision that excludes coverage for the intentional acts of the insured. Rather, the trial court held that the provision excluding coverage for injury or damage "which is the result of willful or malicious acts of an insured" precluded coverage in this case. We conclude that the trial court ruled correctly, and we affirm.

Our supreme court has held an objective standard is to be applied where the policy exclusion at issue denies coverage for bodily injury or property damage "which is the result of willful and malicious acts of an insured." *State Farm Fire & Cas. Co. v. Davis*, 612 So.2d 458, 465 (Ala. 1993). <u>The exclusion at issue in this case focuses on the acts of the insured, and not on whether the insured intended to cause injury</u>. The trial judge specifically found that <u>although McCauley had phrased her complaint so as to include the word "negligence," her complaint clearly alleged only a willful or malicious act</u>.

Our research revealed no Alabama cases on point. We find the reasoning of the Louisiana Court of Appeals in addressing cases involving similar exclusionary provisions particularly persuasive.

In *Keathley v. State Farm Fire & Cas. Ins. Co.*, 594 So.2d 963 (La. App. 1992), the defendant struck the plaintiff in the face, causing the plaintiff to lose several teeth. The court held that the defendant's homeowner's insurance provider was not required to indemnify or to defend the defendant, because of a policy exclusion; that exclusion was identical to the one at issue in this case. The court held that although the defendant might not have intended the resulting injury to the plaintiff, or the extent of that injury, the act of striking the plaintiff was a willful act for which coverage was excluded.

In *Jeansonne v. Detillier*, 656 So. 2d 689 (La. App. 1995), the defendant filed a false felony complaint alleging that the plaintiff had raped her. The plaintiff sued the defendant and the defendant's homeowner's insurance provider. After a jury trial, the trial court dismissed the insurer from the case after finding that the policy did not provide coverage for the defendant's actions. The appellate court

> affirmed, holding that the clause excluding coverage for injury or damage "which is the result of willful and malicious acts of an insured" negated the insurer's obligation to indemnify the defendant.
>
> The courts in both *Jeansonne* and *Keathley* quoted a 1964 edition of William L. Prosser, Law of Torts, in defining "willful" conduct as that in which the actor "has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Jeansonne v. Detillier*, 656 So. 2d at 692; *Keathley v. State Farm Fire & Cas. Ins. Co.*, 594 So. 2d at 965. In both cases, <u>the court noted that although the defendants might not have intended to cause harm to the plaintiffs, they had acted with total indifference to the consequences of their actions</u>. The same can be said regarding the conduct of Estes. "[W]hile [the defendant] may not have fully appreciated the consequences that would follow from [his] actions, that does not make [his] actions any less willful or malicious." *Jeansonne v. Detillier*, 656 So. 2d at 692.

*McCauley*, 726 So. 2d at 722 (emphasis added) (footnote omitted).

In the absence of any contrary controlling authority from the Supreme Court of Alabama and consistent with that high court's opinion in *Davis*, this court adopts the *McCauley* framework in applying this policy's malicious act exclusion. Therefore, the focus becomes not what Mr. Lee subjectively intended to happen to Jeffery Blake Stone, but rather whether the record objectively demonstrates a total indifference, on the part of Mr. Lee, to the consequences of his actions, resulting in Jeffery Blake Stone's death, and subsequent abuse of his corpse.

Here, there is no dispute that the Wrongful Death Suit alleged that Jeffery

13

Blake Stone's was shot numerous times. Objectively, subjecting a victim to a series of gunshots shows a reckless disregard for that person's safety, regardless of whether the shooter specifically intends death — or some lesser injury — to result.

Mr. Lee also does not dispute that Jeffery Blake Stone's body was found in a freezer at Mr. Lee's residence. Such a purposeful, callous, or reckless act objectively falls within the malicious acts exclusion, regardless of whether Mr. Lee subjectively intended to cause additional injury to Jeffery Blake Stone or inflict emotional harm or mental anguish on Mr. and Mrs. Stone.

The record also establishes that Mr. Lee entered a plea and was adjudicated guilty of charges for both murder and the abuse of Jeffery Blake Stones's body. (Doc. 38-1 at 52-53, 55-58). While this type of criminal evidence solely by itself may be inadequate to show an insured's subjective intent from the standpoint of an intentional acts exclusion (*see* Doc. 44 at 7 ("Thus, under *White*, *Jackson*, and *Chestang* it is clear that criminal convictions alone are not sufficient to establish subjective intent for purpos[e] of interpreting exclusions in a homeowner's policy[.]")), none of the foregoing authorities relied upon by Mr. Lee involves an analysis of a malicious acts exclusion, and the court is unaware of any binding precedent prohibiting the use of such proof to substantiate an insured's deliberate actions in the context of such a provision.

In fact, Mr. Lee observes in his opposition that "criminal convictions . . . require findings of <u>objective</u> intent[.]" (Doc. 44 at 7 (emphasis added)). Finally, Mr. Lee has not cited to any cases, controlling or otherwise, that have precluded the use of criminal convictions to support the application of a malicious acts exclusion, which the court, consistent with *Davis* and *McCauley*, has determined is viewed under an objective lense. As such, he has waived the issue. *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court). Therefore, for all these reasons, the court concludes that the malicious acts exclusion applies, and State Farm has no duty to defend Mr. Lee under the policy.

**C.    Duty to Indemnify**

Because the duty to defend is broader than the duty to indemnify, and this court has found that there is no duty to defend based on the objective application of the malicious acts exclusion to the undisputed record before it, the court necessarily concludes that State Farm does not owe Mr. Lee any duty to indemnify. *See, e.g., United States Fidelity and Guarantee Co. v. Bonitz Insulation Co. of Alabama*, 424

So. 2d 569, 572 (Ala. 1982) (holding that, because there was no coverage under the applicable insurance policy because there was not an "accident," the insurer owed no duty to defend its insured "and also, of course, no liability for any judgment rendered in that action"); *see also Employers Mut. Cas. Co. v. Evans*, 76 F. Supp. 2d 1257, 1262 (N.D. Ala. 1999) (noting that "a determination that there is no duty to defend may well determine the duty to indemnify issue").

## V.  CONCLUSION

Accordingly, for the reasons explained above, State Farm has affirmatively shown the absence of any genuine issue regarding the objective application of the policy's malicious acts exclusion to Mr. Lee's undisputed conduct, and the Motion is due to be granted.  The court will enter a separate order.

**DONE** and **ORDERED** this 31st day of August, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge